UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADVANCED MULTILEVEL CONCEPTS, Inc., and ABLE DIRECT MARKETING,<br><br>Plaintiffs,<br><br>v.<br><br>HILLARD M. STERLING, Esq., FREEBORN & PETERS, LLP, and DOES 1 through 30, inclusive,<br><br>Defendants. | No. 12 C 4832<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Advanced Multilevel Concepts, Inc. ("Advanced"), and Able Direct Marketing ("Able"), both Wyoming corporations, have brought this action against Hillard M. Sterling, Esq., and Freeborn & Peters LLP alleging defamation and intentional interference with prospective economic advantage. Defendants now move to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. Because Plaintiffs have not adequately stated claims for defamation or intentional interference, Defendants' motion is granted.

## BACKGROUND

This complaint is one part (a smaller part) of an extensive legal battle between the plaintiffs and a company called VitaminSpice ("VS"), its CEO Edward Bukstel ("Bukstel") and Keith Mazer ("Mazer"). The plaintiffs are shell corporations whose corporate counsel is a lawyer named Jehu Hand ("Hand"). Hand was bookkeeper and securities counsel to VS from late September 2009 until early July 2010. On the other side of this suit is Hillard Sterling ("Sterling"), a lawyer, and his former firm Freeborn and Peters ("Freeborn").

1

Sterling and Freeborn had a client, Mazer. Mazer and Hand are in acrimonious and drawn out litigation against each other concerning ownership of residential property in Antigua and are adversaries in other federal court proceedings.

Advanced and Able acquired a lot of VS shares, over 3 million shares each. Advanced still owns 1,940,000 shares. These plaintiffs do not know much about the factual allegations that they raise here. They are in the "information and belief" category. The beginning of the matter was a Stop Order imposed first on Able's shares and then on Advanced's shares. Plaintiffs believe that these stop orders were wrongfully imposed, and part of the damages Plaintiffs claim are due to the decline in the price of VS shares while the stop orders were in place. In fact, Plaintiffs filed a complaint against VS and Bukstel in the Northern District of California regarding the stop orders. That case was dismissed without prejudice. In the course of that litigation, it came to light that a VS board resolution cited comments made by Sterling about Plaintiffs and Hand as justification for the stop orders.

Mazer was sued in court over claimed fraud in an investment he brokered, and he settled the case for a cash payment. In a different case, Mazer was alleged to have defrauded others in stock transactions he brokered. That case is set for trial.

*Mazer v. Hand* (the fight over the Antigua property) is pending in Antigua. In *Hand v. Mazer*, Hand sued Mazer for assault and battery (fist punches to head), but he dismissed it because he turned out not to have long-term brain damage. Sterling is Mazer's lawyer for all the cases in the United States. Hand has also sued VS and Bukstel. Sterling is their lawyer, as he is in another case over a libelous press release.

The current case arose out of disputes over the management of VS, based in part on claims of Bukstel's "apparent alcohol addiction." Hand wrote to the company directors about

Bukstel's alleged improprieties and incompetence. On the same day (6 July 2010), Bukstel terminated Hand's relationship with VS as bookkeeper and securities counsel. Around six days later, Bukstel ordered the transfer agent to Stop Order the Able shares for 30 days. Plaintiffs allege, and I accept as fact, that the stop orders were wrongful. (The transfer agent, Stalt Inc. may be liable for imposing the stop order but the agent is not sued here.) Indeed Bukstel, concerned with the legitimacy of the orders, instructed the transfer agent to remove them in late August.

Only then does Sterling come into the case. Bukstel is alleged to have gone to the Internet to find people "who had adverse interests to…Hand." He contacted Sterling upon finding out about the Mazer cases. Plaintiffs infer that Sterling said bad things about Hand for the "sole intended objective…to harm Hand through his clients for purposes of benefitting Sterling's client, [Mazer,] in unrelated litigation against Hand." How this benefits Mazer is not clear to any reader of the complaint and Plaintiffs do not explain this, but it is sufficient that Sterling may have entertained a view that anything that wounds Hand helps Mazer.

Sterling also spoke to Stalt who said Sterling had "some interesting information to say the least."

It is at this point that the complaint against Sterling crosses a line that defeats its purpose. Plaintiffs say, "on information and belief," that during the telephone call Sterling once again pontificated at length.[1] Sterling, it is alleged, "insinuated to Stalt that Hand and his clients are serial fraudsters." The only documented statement about Sterling's words appears in a VS directors' "whereas" clause in a resolution, to wit, "Directors…have been notified by Hillard Sterling, an attorney engaged in litigation against Jehu Hand…of potential irregularities with

---

[1] There is nothing in the complaint that alleges the length of any of these calls or that Sterling's speech was "pontificating" in nature.

3

Shareholders represented by Jehu Hand." The Board then resolved to place a stop order on Advanced's shares.

## DISCUSSION

This action is in federal court by virtue of diversity jurisdiction. Although state law governs the substantive aspects of Plaintiffs' claims, federal pleading rules apply. *See Fishering v. City of Chicago*, 2008 WL 834436, *2 (March 27, 2008, N.D.Ill. 2008). When considering a motion to dismiss for failure to state a claim, the court treats all well-pled allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Factual allegations must be enough to raise a right to relief above the speculative level, that is, the pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action. *Id*.

### A. Defamation

To state a claim for defamation under Illinois law, "the plaintiff must set out sufficient facts to show that the defendants made a false statement concerning him, that there was an unprivileged publication to a third party with fault by the defendant, which caused damage to the plaintiff." *Krasinski v. United Parcel Serv., Inc.*, 124 Ill. 2d 483, 490, (1988). Neither Illinois courts, nor courts in this district have required plaintiffs to quote allegedly defamatory language verbatim. *See Graves v. Man Group USA, Inc.*, 479 F.Supp.2d 850, 855 (N.D.Ill. 2007); *Krueger v. Lewis*, 342 Ill.App.3d 467, 470 (1st Dist. 2003); *but see Hackman v. Dickerson*, 520

F.Supp.2d 954, 975 *(*N.D.Ill., 2007*)* (noting that courts have found that complaints need not quote defamatory language verbatim, but noting also that these decisions pre-date the Supreme Court's decision in *Twombly*, 550 U.S. at 544).

Further, "statements of opinion, although defamatory, do not give rise to a defamation claim." *Giant Screen Sports v. Canadian Imperial Bank Of Commerce*, 553 F.3d 527, 534 (7th Cir. 2009) (and cited cases). Actionable defamation must contain an objectively verifiable factual assertion. *Id*. at 535. "Although in one sense all opinions imply facts, the question of whether a statement of opinion is actionable as defamation is one of degree; the vaguer and more generalized the opinion, the more likely the opinion is non-actionable as a matter of law." *Id*. (internal citations omitted).

The basic problem of the complaint is that the only things Sterling is alleged to have said are not actionable. He does not state that there are irregularities, a statement which in itself may not be actionable. He asserts only that there are "potential" irregularities, a phrase which includes cases in which (a) irregularities are not found to exist (b) irregularities do exist and can be resolved and (c) irregularities exist but are found not to be legally material. The plaintiffs are, I infer, quite well aware of the weakness of their complaint because on bare information and belief they claim "insinuation" about "serial fraudsters." They do not suggest that Sterling told Bukstel that he should initiate stop orders. And there is nothing from which someone could infer that the stop orders would not have been entered but for Sterling's statements to the Board.

Plaintiffs' pleadings establish only that the VS board, having learned of Mr. Sterling's statements, concluded that there were "potential irregularities" concerning Plaintiffs. Plaintiffs do not allege with any further specificity what they believe was said by Mr. Sterling, and the conclusion drawn by the VS board as a result of his unspecified comments was equivocal. Such

5

an equivocation (or, more accurately, alleging an unknown statement that prompted its recipient to come to such an equivocation) is not sufficiently precise to establish a right to relief beyond the "speculative level," *see Twombly*, 550 U.S. at 555, nor can the statement be "reasonably interpreted as stating actual facts." *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990); *Bryson v. News Am. Publications, Inc.*, 174 Ill. 2d 77, 100 (1996). The statements in question are "opinions," which cannot serve as the basis for liability. *See id.*

To the extent mere equivocation such as this is an improper basis for placing a stop order on Plaintiffs' stock certificates, Plaintiffs' complaint is with the VS board. And there is indeed just such a lawsuit pending between the relevant parties. With respect to this action, however, Plaintiffs have pled no more than VS was willing to place a stop order on Plaintiffs' stock certificates solely on the basis of an apparently equivocal and imprecise statement by Mr. Sterling. Such a pleading is insufficient to state a claim for defamation.

There are other problems with the defamation complaint. The Sterling conversations occurred in early October 2010. There is a one-year statute of limitations for libel claims under Illinois law. Plaintiffs filed a libel/slander claim in the Northern District of California about 14 months after Sterling's words were uttered. The case was dismissed without prejudice so the clock never stopped the running of the limitation period. *Elmore v. Henderson,* 227 F.3d 1009, 1011 (7th Cir. 2000). The plaintiffs filed the suit over the stop orders about a month after the October events. Diligent discovery of the Board Resolution would have led to prompt discovery of Sterling's communication. For whatever reason, Plaintiffs might be entitled to some small period to discover but it was too late for them to sue in California and way too late to sue here.

There is also the defense that the statements are protected by the litigation privilege, which immunizes defamatory statements made preliminarily to or during the course of litigation.

6

*See Scheib v. Grant*, 22 F.3d 149, 156 (7th Cir. 1994); *Libco Corp. v. Adams*, 100 Ill.App.3d 314, 316-17 (1st Dist. 1981). The complaint itself tells us that Sterling was making his statements because he was seeking to aid Mazer, his client, and later Sterling became VS's lawyer as well. Both Bukstel and Sterling were adversaries of Hand, a litigious person, and their cooperation was in aid of litigation, either existing or nearly certain to occur.

**B. Intentional Interference with Prospective Economic Advantage**

Plaintiffs' claim for intentional interference with prospective economic advantage is similarly deficient. In Illinois, the elements of such a cause of action are: (1) the plaintiff's reasonable expectation of entering into a valid business relationship; (2) the defendants' knowledge of plaintiff's expectancy; (3) purposeful interference by the defendants that prevents the plaintiff's legitimate expectancy from being fulfilled; and (4) damages to the plaintiff resulting from such interference. *Burrell v. City of Mattoon*, 378 F.3d 642, 652 (7th Cir. 2004) (and cited cases).

It is not pled that Sterling interfered with Plaintiffs' legitimate expectations of business. Stalt may have done that, so might have Bukstel, but not Sterling. I cannot infer that Sterling even knew of the underlying issue. The complaint shows, at best, that Bukstel and Stalt wanted to probe into Hand's background and practices. It does not show that Sterling knew, even generally, the nature of the actions under consideration at VS. In any event, Sterling cannot be said to have caused the stop orders.

Further, with respect to the third element, "purposeful" interference refers to "some impropriety committed by the defendant in interfering with the plaintiff's expectancy of entering into a valid business relationship with an identifiable third party." *Atanus v. Am. Airlines, Inc.*, 403 Ill. App.3d 549, 557, *reh'g denied* (Aug. 25, 2010), *appeal denied*, 238 Ill.2d 647 (2010)

7

(and cited cases); *see also Hackman*, 520 F.Supp.2d at 971. Yet the only impropriety that might be inferred from Plaintiffs' complaint is that Mr. Sterling's interference was defamatory in nature. As described above, however, Plaintiffs have not adequately alleged defamation, and that would-be inference is thus insufficient to sustain Plaintiffs' intentional interference claim. *Cf. Hackman*, 520 F.Supp.2d at 971.

Finally, a lawyer is entitled to do, in the service of his client, what Sterling did with respect to Hand here. Indeed, this lawsuit against Sterling may be a similarly motivated effort to help Hand in his lawsuits against Sterling's client, though I need not determine whether that is the case.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for failure to state a claim is granted. The complaint is dismissed with prejudice.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: December 5, 2012